Brandon SMALL, Petitioner,

v.

Janet RENO, Attorney General, U.S. Immigration and Naturalization Service, Steven J. Farquharson, District Director, and Gary Cote, Officer in Charge, Respondents.

No. Civ.A.3:00CV2155(JCH).

United States District Court,
D. Connecticut.

Dec. 29, 2000.

Michael J. Boyle, North Haven, CT, for petitioner.

James K. Filan, Jr., U.S. Attorney's Office, New Haven, CT, for defendants.

## RULING ON PETITION FOR HABEAS CORPUS [DKT. NO. 1]

HALL, District Judge.

The petitioner, Brandon Small, is a lawful permanent resident alien who is currently being detained at the Hartford Community Correctional Center. After serving a five-year sentence for possession of cocaine with intent to sell, the Immigration and Naturalization Service ("INS") apprehended and detained the petitioner in August 2000 for removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). An Immigration Judge has found him removable, but another Immigration Judge further found that the petitioner is eligible for discretionary relief from deportation under former section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). An individual hearing on the petitioner's section 212(c) request is pending.

The petitioner filed a Petition for Writ of Habeas Corpus in this court on November 7, 2000. The court issued an Order to Show Cause on November 14, 2000, and the court heard oral argument on December 6, 2000. The petitioner seeks a writ ordering the INS to provide the petitioner with a bond hearing before an Immigration Judge. For the reasons below, the Petition [Dkt. No. 1] is granted.

## I. FACTS

The following facts are not in dispute. The petitioner came to the United States in 1979 at the age of 7. He currently enjoys the status of a lawful permanent resident alien. The petitioner has two children, ages six and seven, with his girlfriend, Silvia Mejil, who is a U.S. citizen. He lived with them in Waterbury, Connecticut, prior to his imprisonment on a state court conviction on August 28, 1995, for drug possession with intent to sell. The petitioner's parents and his two brothers also live in Waterbury and are all citizens or permanent resident aliens. The petitioner's grandmother is a U.S. citizen and lives in New York.

The petitioner completed drug rehabilitation and career counseling programs in state prison while serving his sentence of ten years imprisonment, suspended after five years. In August 2000, the petitioner was released into the custody of the INS pursuant to a Notice to Appear for removal proceedings served on the petitioner in prison on October 22, 1999. He remains detained without bond at the Hartford Community Correctional Center at the present time.

## II. DISCUSSION

### A. Jurisdiction

As the respondent concedes, there are no issues with regard to the court's jurisdiction over this petition under 28 U.S.C. § 2241. *See Calcano–Martinez v. INS,* 232 F.3d 328, 342 (2d Cir.2000); *St. Cyr v. INS,* 229 F.3d 406, 409–10 (2d Cir.2000); *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998).

### B. The mandatory detention statute, INA § 236(c)

As part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 2009–546, Congress enacted section 236(c) of the INA, a mandatory detention provision. This section provides, in pertinent part:

(1) Custody

The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title.

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has

been sentence [d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1). The Attorney General has discretion to release such an alien only when he or she is participating in the federal Witness Protection Program "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2). There is no other release provision under section 236(c). However, once an order of removal becomes administratively final, if the alien is not removed within 90 days, the alien becomes eligible for release from custody under INA § 241. *See* 8 U.S.C. § 1231(a); 8 C.F.R. § 241.1 *et seq.*

For purposes of the present petition, it should suffice to observe that the Immigration Judge found that the petitioner had been mandatorily detained under section 1226(c)(1)(B), in accordance with 8 U.S.C. § 1227(a)(2)(A)(iii): "Any alien who is convicted of an aggravated felony at any time after admission is deportable." Under 8 U.S.C. § 1101(a)(43), "[t]he term 'aggravated felony' means— ... (B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." [1]

Specifically, the Immigration Judge found on October 13, 1999, that the petitioner is "not a citizen or national of the United States," is "a native of Trinidad/Tobago and citizen of Trinidad/Tobago," was "admitted to the United States at New York, New York on or about October 6, 1979 as an Immigrant," and was "on September 16, 1995, convicted in Superior Court at Waterbury, Connecticut for the offense of 'Possession of Narcotics with intent to Sell' in violation of Connecticut General Statutes, section 21a–277(a)." The Immigration Judge concluded that,

[o]n the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to ...: Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(3) of the Act, that is, an offense relating to the illicit trafficking in a controlled substance, as described in section 102 of the Controlled Substance Act including a drug trafficking crime, as defined in section 924(c) of Title 18, United States Code.

On October 25, 2000, an Immigration Judge found that he had no jurisdiction to hear the petitioner's request for release on bond because the petitioner "has a final conviction for an offense within the scope of section 236(c)(1) of the [INA]," and "[t]herefore, the Court lacks jurisdiction to redetermine the [petitioner's] custody status. *See* 8 C.F.R. § 3.19(h)(2)(i)(D) (1999)." Section 3.19(h)(2)(i)(D) of Title 8 of the Code of Federal Regulations provides that "an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens: ... (D) Aliens in removal proceedings subject to section

---

1. Section 1226(c)(1)(B) of Title 8 also mandates the detention of any alien who "is deportable by reason of having committed any offense covered in" section 1227(a)(2)(B)(i), which provides:

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

236(c)(1) of the Act...." More specifically, the Immigration Judge noted that another Immigration Judge "determined that the [Immigration and Naturalization] Service had met its burden of proof of establishing by clear and convincing evidence that the [petitioner] is subject to removal because of a conviction for an aggravated felony."

There is no dispute in this case that the section 236(c) mandatory detention provision applies to the petitioner and that the petitioner is removable and will be removed unless he prevails on his request for a INA § 212(c) waiver of deportation. It is also undisputed that the petitioner is not under an administratively final order of removal, which would trigger the detention and release provisions of INA § 241.

### C. INA § 212(c) waiver of deportation

"Under the law in effect prior to the enactment of the [Antiterrorism and Effective Death Penalty Act ("AEDPA") ], certain aliens otherwise determined to be deportable were entitled to apply to the Attorney General or her delegates, [including the Board of Immigration Appeals ("BIA") and Immigration Judges,] for a waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c) (1994)." *St. Cyr*, 229 F.3d at 410. Former INA § 212(c) provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [provisions setting forth various grounds for exclusion] .... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years.

8 U.S.C. § 1182(c) (1994) (repealed by IIRIRA § 304(b), 110 Stat. at 3009–597, Sept.

30, 1996). As the Second Circuit explained in *St. Cyr*:

> Discretionary relief from deportation, which has been available in our system in some form since at least 1917, *see Francis [v. INS*, 532 F.2d 268, 270 (2d Cir.1976) ], provides the Attorney General with a mechanism to consider the impact of immigration on an alien's family. Prior to 1996, INA § 212(c) gave power to the Attorney General to permit a worthy alien to stay in this country in order to avoid extraordinary hardship to the alien's family in the United States. *See id.* at 272. In a case where a convicted alien demonstrated that he or she had a lawful unrelinquished domicile in the United States for at least seven years and that his or her conviction was not for an "aggravated felony," for which he or she had served a term of imprisonment of five years or longer, the Attorney General could, in her discretion, waive deportation. *See* 8 U.S.C. § 1182(c) (1994). Under the law in effect before 1996, if the Attorney General denied relief, the alien could challenge that denial by filing a petition for review in the court of appeals. *See* 8 U.S.C. § 1105a(a) (1994) (repealed by IIRIRA § 306(b), 110 Stat. at 3009–612, Sept. 30, 1996).

229 F.3d at 410–11. "In considering applications for waiver of deportability, immigration judges must balance the adverse factors demonstrating an alien's undesirability as a permanent resident of the United States with the social and humane factors presented on his behalf." *Arango–Aradondo v. INS*, 13 F.3d 610, 613 (2d Cir.1994) (citing, *inter alia, Matter of Marin*, 16 I. & N. Dec. 581, 584–85 (BIA 1978)).

Following an Immigration Judge's decision on a section 212(c) request, the BIA, from which an Immigration Judge's decision on a section 212(c) request could be administratively appealed, has "very broad discretion ... with respect to discretionary waivers of deportation pursuant to INA

§ 212(c)." *Pillay v. INS*, 45 F.3d 14, 17 (2d Cir.1995) (per curiam) (citations omitted). Under the pre-IIRIRA immigration law, a court of appeals could review the BIA's denial of a section 212(c) waiver for an abuse of discretion. *See id.* However, amendments to the INA enacted pursuant to IIRIRA, effective April 1, 1997, eliminated the jurisdiction of the courts of appeals to review discretionary decisions of the Attorney General, including decision on section 212(c) waivers. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

IIRIRA entirely repealed INS § 212(c). *Calcano–Martinez*, 232 F.3d at 331; *St. Cyr*, 229 F.3d at 411. However, because the petitioner was convicted prior to September 30, 1996, INA § 212(c) is still available to him as a statutory source of relief from deportation. *See St. Cyr*, 229 F.3d at 420–21.

### D. Substantive due process challenge to section 236(c)

The petitioner argues that his mandatory detention under section 236(c) is unconstitutional as applied to him because it violates his substantive due process right to be free from restraint of his liberty without a detention hearing. The respondents counter that, while detained pending removal proceedings, the petitioner does not have a fundamental liberty interest to be free from confinement or a liberty interest in release from custody.

The court must engage in a multi-step analysis to resolve the petitioner's substantive due process claim. First, the court must determine whether the petitioner is making a facial or as-applied challenge to section 236(c). Second, the court must determine what standard of review to apply in assessing the constitutionality of section 236(c). This step requires the court to identify the liberty interest upon which the petitioner is relying and to determine whether that interest implicates a fundamental right. Third, the court must assess the constitutionality of the statute at issue, section 236(c) of the INA, under the appropriate standard of substantive due process review.

### 1. The petitioner raises an as-applied challenge

Turning to the issue of whether the petitioner has raised a facial or as-applied challenge to the constitutionality of section 236(c), the court concludes that the petitioner's substantive due process challenge to the section 236(c) mandatory detention statute is an as-applied challenge, as the petitioner frames the claim, and not a facial challenge, as the respondents portray it. The respondents conflate the standard of review to be applied to the petitioner's challenge with the threshold issue of whether the petitioner is challenging section 236(c) facially or only as applied to the petitioner. *See, e.g.,* Respondents' Response at 20. At least one court in this district has found for a petitioner on an as-applied substantive due process challenge to section 236(c). *See Rogowski v. Reno*, 94 F.Supp.2d 177, 185 (D.Conn.1999). In resolving this issue, the court notes that the *Rogowski* court treated a petitioner's challenge to section 236(c) as an as-applied claim because he was eligible for a section 212(c) waiver of deportation, unlike other aliens who are mandatorily detained under section 236(c). *See id.*

Based on the same reasoning applied by the *Rogowski* court, the court will treat Small's challenge as an as-applied, and not a facial, substantive due process challenge, since the liberty interest implicated by Small's mandatory detention is crucially dependent upon the particular facts of the petitioner's case, *i.e.,* his impending section 212(c) hearing. By way of contrast, in *Reno v. Flores*, the Supreme Court decided a facial challenge to INS regulation 242.24, which had not yet been applied to the petitioners in that case. 507 U.S. 292, 300–01, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Here, the INA § 236(c) mandatory detention provision has been applied to the petitioner since August 2000, and he challenges it on the grounds of the liberty

interest it infringes arising from the particular facts of his case. More fundamentally, the respondents' argument that the petitioner's challenge fails under a facial challenge standard cannot convert the nature of the petitioner's challenge, which the petitioner has clearly framed as an as-applied substantive due process claim. Thus, because Small has raised only an as-applied challenge, the petitioner need not "establish that no set of circumstances exists under which [section 236(c) ] would be valid," as is required to successfully mount a facial challenge. *Id.* at 301, 113 S.Ct. 1439 (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)) (internal quotation marks omitted).

**2. The petitioner asserts a fundamental liberty interest**

■ Turning to the merits of the petitioner's as-applied substantive due process claim, the court notes that the substantive component of the due process clause of the fifth amendment "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 302, 113 S.Ct. 1439 (citations omitted). "Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against government action that is 'incorrect or ill-advised,' . . . . Moreover, government action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted). Thus, "[s]o-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . ., or interferes with rights "implicit in the concept of

ordered liberty," . . . ." *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095 (citations omitted).

■ "Substantive due process analysis must begin with a careful description of the asserted right, for [t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Flores,* 507 U.S. at 302, 113 S.Ct. 1439 (citations omitted). Thus, "[t]he first step in substantive due process analysis is to identify the constitutional right at stake." *Lowrance,* 20 F.3d at 537 (citation omitted). If the interest that the petitioner is asserting is "fundamental," the section 236(c) mandatory detention provision which infringes that interest must be narrowly tailored to serve a compelling government interest. *See Flores,* 507 U.S. at 302, 113 S.Ct. 1439. If the right asserted by the petitioner is "not a fundamental liberty interest protected by the Due Process Clause," the court must only decide whether section 236(c) is rationally related to a legitimate government interest. *See Washington v. Glucksberg,* 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

■ "A liberty interest may arise from either of two sources—the Due Process Clause itself [or] the laws of the States." *Rodriguez v. McLoughlin,* 214 F.3d 328, 337 (2d Cir.2000) (quoting *Kentucky Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)) (internal quotation marks omitted). Here, the petitioner is not claiming a liberty interest in remaining in this country or freedom from removal. To do so would be pointless, for there is no substantive due process right not to be deported. *Doherty v. Thornburgh,* 943 F.2d 204, 212 (2d Cir. 1991). Neither is the petitioner claiming a substantive due process right to actually receive section 212(c) relief in the form of waiver of deportation.[2] Moreover, the pe-

**2.** Moreover, although the court finds that the petitioner has an entitlement to a hearing on his INA § 212(c) request by virtue of his stat-

utory eligibility for such relief, the court rejects the respondents' straw man characterization of the liberty interest the petitioner

titioner does not claim a fundamental liberty interest in being released on bail by an Immigration Judge, nor is the petitioner seeking to champion an "absolute constitutional barrier to detention of potentially dangerous resident aliens pending deportation proceedings." *Salerno*, 481 U.S. at 748, 107 S.Ct. 2095 (citations omitted). Rather, the petitioner is claiming only a fundamental liberty interest in freedom from restraint without a detention or bond hearing during his removal proceedings.

■ While seeking to identify the liberty interest the petitioner is claiming, it is important to note that, whatever may be entailed in the respondents' argument that the petitioner is "removable" by virtue of the Immigration Judge's determination that the petitioner "is subject to removal because of a conviction for an aggravated felony," there is no dispute that the petitioner is not yet subject to an administratively final order of removal. It is well-settled that "[a] lawful permanent resident who commits a removable or deportable offense remains a lawful permanent resident until an administratively final order of removal· or deportation deprives him of that status." *In re Mendoza–Sandino*, Interim Dec. 3426, 2000 WL 225840 (BIA 2000). This will generally occur "when the [BIA] renders its decision in the case upon appeal or certification or, where no appeal to the [BIA] is taken, when appeal is waived or the time allotted for appeal has expired." *Matter of Lok*, 18 I. & N. Dec. 101, 105 (BIA 1981) (citations omitted). The court therefore rejects the respondents' contention that the petitioner "is on the same footing as an excludable alien who has *no* substantive right whatsoever to be here." The Supreme Court's holding that "an alien seeking initial admission to

the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative" has no application in this case. *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (citations omitted). Rather, as the Supreme Court held in the same case, "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Id.*

■ The petitioner, therefore, remains a lawful permanent resident alien, entitled to the constitutionally-protected liberty interests that flow from that status. The Second Circuit has held that, "under the due process clause of the fifth amendment, aliens ... possess a substantive due process right to liberty during deportation proceedings." *Doherty*, 943 F.2d at 208 (footnote omitted). In so holding, the Court of Appeals followed a long line of holdings of the Supreme Court which establish the due process rights of lawful permanent resident aliens. In 1953, the Supreme Court held that, "[i]t is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the fifth amendment. He may not be deprived of his life, liberty or property without due process of law." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953) (footnote omitted). In *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), the Supreme Court observed that "[t]here are literally millions of aliens within the jurisdiction of the United States," and held that "[t]he Fifth Amendment, as well as the Four-

asserts as that of entitlement to section 212(c) relief in the form of a waiver of deportation. *See* Gov't Brief at 10–11. It is true, as the respondents repeatedly cite in their brief, that the Supreme Court has described a waiver of deportation granted under section 212(c) as "an act of grace." *INS v. Yang*, 519 U.S. 26, 30, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996)

(internal quotation marks omitted). The discretionary nature of section 212(c) relief, however, does nothing to alter the petitioner's status as a lawful permanent resident alien while his 212(c) request is pending nor does it alter the substantive due process rights that this status accords him.

teenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law." 426 U.S. at 77, 96 S.Ct. 1883 (citations omitted). Indeed, the Court held that "[e]ven one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." *Id.* (citations omitted); *see also Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." (citations omitted)). The Court has also held that "a continuously present resident alien is entitled to a fair hearing when threatened with deportation, ..., and, although we have only rarely held that the procedures provided by the executive were inadequate, we developed the rule that a continuously present permanent resident alien has a right to due process in such a situation." *Plasencia,* 459 U.S. at 32–33, 103 S.Ct. 321 (citations omitted). Most recently, the Court noted that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Flores,* 507 U.S. at 306, 113 S.Ct. 1439 (citation omitted).

Following these precedents, the Second Circuit has held that "aliens do have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty,* 943 F.2d at 209. The Court of Appeals reasoned that, "[i]n the context of pre-deportation detention, the fifth amendment cannot be interpreted as denying aliens substantive due process rights while, at the same time, affording them procedural due process rights. It would make little sense to interpret the fifth amendment as permitting the deprivation of an alien's liberty by the government in a manner that 'shocks the conscience,' ... with the single constraint that adequate procedural safeguards be provided before subjecting the alien to such treatment." *Id.* (citations omitted).

The Second Circuit has also held, however, that "this is a narrow right and that judicial review of alleged interference with the right by the federal government is limited." *Id.* at 208. The Court of Appeals discussed at length the limits on aliens' substantive due process rights:

> It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest. Control over matters of immigration and naturalization is the "inherent and inalienable right of every sovereign and independent nation." ... Under the United States Constitution, such control is vested in the political branches of government.... Congressional power in this area is plenary, subject to only limited judicial review.... In exercising its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens." ... Governmental conduct that may be considered "shocking" when it serves to deprive the life, liberty or property of a citizen may not be unconstitutional when directed at an alien.

*Id.* at 209 (citations omitted).

The court notes, however, that the Supreme Court has also held that, although "[t]he plenary authority of Congress over aliens under Art. I, § 8, cl. 4 is not open to question, ... what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power." *INS v. Chadha,* 462 U.S. 919, 940–41, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). "Congress has plenary authority in all cases in which it has substantive legislative jurisdiction, ..., so long as the exercise of that authority does not offend some other constitutional restriction." *Id.* at 941, 103 S.Ct. 2764 (citations and internal quotation marks omitted). The court accordingly agrees with the distinction drawn by one district court in deciding a petitioner similar to Small's:

[A] distinction must be made between Congress' power over substantive immigration laws and its power to legislate rules implementing those laws. "Congress' broad authority over immigration has traditionally extended to decisions about what classes of aliens are admissible and deportable and under what circumstances." ... Aliens challenging section 236(c) do not challenge Congress' ability to detain or deport them based on their criminal history.... Rather, they challenge the implementation of that decision and Congress' ability to indefinitely detain them, without any possibility of release on bond, pending administrative proceedings.

*Welch v. Reno,* 101 F.Supp.2d 347, 354 (D.Md.2000) (citations omitted).

The court concludes that the petitioner has a fundamental liberty interest in freedom from restraint without a detention or bond hearing during his removal proceedings, *i.e.,* the petitioner's "interest is that of an individual, detained pending judicial proceedings, to receive a bail hearing in which a judge determines the individual's flight risk and threat to the community." *Id.* at 353. The petitioner has no final order of removal entered against him and is accordingly remains a lawful permanent resident.

The court recognizes that, "[a]lthough substantive due process rights are guaranteed to an individual, in part, through the liberty component of the Due Process Clause, ..., this does not mean that a fundamental right is implicated every time a governmental regulation intrudes on an individual's 'liberty.' " *Immediato v. Rye Neck Sch. Dist.,* 73 F.3d 454, 463 (2d Cir. 1996) (citation omitted). The court is aware that, as the Second Circuit has held, "strict scrutiny is reserved only for those governmental regulations that implicate personal freedoms 'implicit in the concept of ordered liberty.' " *Id.* (citation omitted).

The court finds that section 236(c) implicates such a freedom, however, and the respondents' reliance on the Supreme Court's holding in *Flores* does not counsel otherwise. Indeed, the *Flores* case is readily distinguishable from the petitioner's claim here. The *Flores* Court emphasized the unique factual circumstances of the juvenile petitioners who sought to vindicate "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." 507 U.S. at 302, 113 S.Ct. 1439. Because of the "novelty" of this asserted right, the Court concluded that it "certainly cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 303, 113 S.Ct. 1439 (quoting *Salerno,* 481 U.S. at 751, 107 S.Ct. 2095) (internal quotation marks omitted). More importantly, the *Flores* Court held that " 'freedom from physical restraint' ... is not at issue in this case," either "in the sense of shackles, chains, or barred cells," or "in the sense of a right to come and go at will, since, as we have said elsewhere, 'juveniles, unlike adults, are always in some form of custody' ...." *Id.* at 302, 113 S.Ct. 1439 (citation omitted). The Court observed that "where the custody of the parent or legal guardian fails, the government may (indeed, we have said must) either exercise custody itself or appoint someone else to do so." *Id.* (citation omitted). The Court held that " '[l]egal custody' rather than 'detention' more accurately describes the reality of the arrangement, ... since these are not correctional institutions but facilities that meet 'state licensing requirements for the provision of shelter care, foster care, group care, and related services to dependent children,' ... and are operated 'in an open type of setting without a need for extraordinary security measures,' ...." *Id.* at 298, 113 S.Ct. 1439 (citations omitted). The Court concluded that, applying a rational basis standard of review, "[w]here a juve-

nile has no available parent, close relative, or legal guardian, where the government does not intend to punish the child, and where the conditions of governmental custody are decent and humane, such custody surely does not violate the Constitution." *Id.* at 303, 113 S.Ct. 1439.

In contrast to the regulation at issue in *Flores,* the section 236 mandatory detention provision applies to adults and involves what is indisputably detention in prison settings and not the "legal custody" of children in open settings. The Supreme Court, in the context of pretrial detention of adults under the Bail Reform Act, has recognized the individual's "strong interest in liberty" as well as "the importance and fundamental nature of this right." *Salerno,* 481 U.S. at 750, 107 S.Ct. 2095. As the Court later observed in *Foucha v. Louisiana,* "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (citation omitted). Accordingly, the court concludes that the liberty interest asserted by the petitioner to be free from restraint without a detention or bond hearing during his removal proceedings is one of "fundamental" importance.

### 3. Section 236(c) is excessive in relation to its purposes

Having found that the petitioner's challenge implicates a fundamental liberty interest, the court must determine whether the section 236(c) mandatory detention provision is narrowly tailored to serve a compelling government interest. Specifically, the court looks to the test applied in *Salerno,* in which the Supreme Court considered a substantive due process challenge to a pretrial detention statute. Under the *Salerno* test, "the challenged statute must be regulatory, not punitive and if the statute is regulatory, it must not appear excessive in relation to the purpose behind the statute." *Avramenkov v. INS,* 99 F.Supp.2d 210, 217 (D.Conn.2000)

(citing *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095).

Applying the first part of this test, the *Salerno* Court "concluded that the detention imposed by the [Bail Reform] Act falls on the regulatory side of the dichotomy [between impermissible punishment or permissible regulation]." 481 U.S. at 747, 107 S.Ct. 2095. Similarly, in the instant case, the court recognizes that the mandatory detention authorized by section 236(c) must be considered regulatory and not punitive in nature: "Deportation is not a criminal proceeding and has never been held to be punishment." *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The Supreme Court has held that "[d]etention is necessarily a part of this deportation procedure," for "[o]therwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings." *Id.* at 538, 72 S.Ct. 525.

The court must then consider whether the section 236(c) mandatory detention provision is excessive in relation to the purposes behind the statute, *i.e.,* whether it is narrowly tailored to serve a compelling government interest. Congress has made clear its purposes in passing this provision. "In passing IIRIRA, Congress articulated the following reasons for including a mandatory detention provision: (1) protecting the public from potentially dangerous criminal aliens; (2) risk of flight during removal proceedings; (3) insuring attendance at removal hearings; and (4) restoring the public's faith in the immigration system." *Zgombic v. Farquharson,* 89 F.Supp.2d 220, 235 n. 13 (D.Conn.2000) (citing S.Rep. No. 104–48, reprinted in 1995 WL 170285 (Leg.Hist.), at 1–6, 9, 18–23 (Apr. 7, 1995)). Given Congress's broad power over immigration, the court agrees with the district court in *Rogowski* that "[t]hese goals are reasonable and legitimate." 94 F.Supp.2d at 184.

The court must therefore assess whether the section 236(c) mandatory detention provision is excessive in relation to these

purposes or are insufficiently narrowly tailored to serve compelling government interests. The legislative history of IIRIRA indicates that "[m]any criminal aliens who are released pending their deportation never appear for their deportation proceedings" and that "over 20 percent of non-detained criminal aliens do not appear for their deportation proceedings." S.Rep. No. 104–48, reprinted in 1995 WL 170285, at 18. This court agrees with the district court's analysis in *Rogowski* of the significance of this evidence in relation to a petitioner who is eligible for section 212(c) relief:

> The primary risk arises from the twenty percent of criminal aliens who abscond during proceedings. Eighty percent do not abscond. Petitioner asserts that he is not a flight risk. The statute's flaw is that it does not allow petitioner to substantiate this assertion at a hearing. A hearing presents a readily available, less restrictive means for the government to achieve its purposes. . . . Due process does not allow attribution to a large, diverse group characteristics demonstrated to be applicable to only a small number . . . . Detention of aliens and others have been upheld on account of some discretion or the existence of another opportunity for relief.

94 F.Supp.2d at 184–85 (citations omitted). "Section 236, in contrast, allows neither a hearing nor untrammeled discretion to the Attorney General—in short, no provisions to guarantee due process." *Id.* at 185. Furthermore, mandatory detention, without a bond hearing, of a lawful permanent resident alien who is still eligible for section 212(c) relief cannot be considered narrowly tailored to serve a compelling government interest in insuring attendance at removal hearings. The court notes that attending removal hearings at which this petitioner's discretionary relief will be considered remains the petitioner's one opportunity to remain lawfully in the United States. The legislative history, cited by the respondents,

which indicates that almost 90 percent of criminal and non-criminal aliens who were issued orders to surrender for deportation, following the issuance of a final order of deportation, failed to surrender is largely inapplicable to the petitioner's situation. *See* Respondents' Response at 22 (quoting S.Rep. No. 104–48, reprinted in 1995 WL 170285, at 19). The petitioner is not yet under a final order of removal and remains eligible for section 212(c) relief. Absent statistics showing a high risk of flight by lawful permanent resident aliens seeking section 212(c) relief for which they are statutorily eligible, the cited evidence does not support the respondents' claim, *i.e.*, that an irrebuttable presumption that this petitioner is a flight risk or a danger to the community and must be detained without a hearing is not excessive in relation to Congress's stated goals.

The court notes, however, that the Supreme Court has upheld similar pretrial detention provisions under the Bail Reform Act in *Salerno*. However, the differences between the section 236(c) mandatory detention provision that the petitioner challenges and the Bail Reform Act provisions upheld in *Salerno* illustrate the failure of Congress to narrowly tailor the operation of section 236(c) to meet the purposes behind its enactment. Indeed, the Supreme Court in the later case *Foucha* thoroughly distinguished its holding in *Salerno* on grounds very relevant to the instant analysis:

> We observed in *Salerno* that the "government's interest in preventing crime by arrestees is both legitimate and compelling," . . . and that the statute involved there was a constitutional implementation of that interest. The statute carefully limited the circumstances under which detention could be sought to those involving the most serious of crimes (crimes of violence, offenses punishable by life imprisonment or death, serious drug offenses, or certain repeat offenders), . . . , and was narrowly fo-

cused on a particularly acute problem in which the government interests are overwhelming.... In addition to first demonstrating probable cause, the Government was required, in a "full-blown adversary hearing," to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person, *i.e.*, that the "arrestee presents an identified and articulable threat to an individual or the community." ... Furthermore, the duration of confinement under the Bail Reform Act of 1984(Act) was strictly limited. The arrestee was entitled to a prompt detention hearing and the maximum length of pretrial detention was limited by the "stringent time limitations of the Speedy Trial Act." ... If the arrestee were convicted, he would be confined as a criminal proved guilty; if he were acquitted, he would go free. Moreover, the Act required that detainees be housed, to the extent practicable, in a facility separate from persons awaiting or serving sentences or awaiting appeal.

504 U.S. at 81, 112 S.Ct. 1780 (citations omitted). The Bail Reform Act provisions thus provided what the statute at issue in *Foucha* and the section 236(c) mandatory detention provision crucially lack: the opportunity to seek a prompt detention hearing and a cap on the maximum length of detention. The *Foucha* Court found that "Louisiana's detention of insanity acquittees who are no longer mentally ill" violated substantive due process because "Louisiana scheme of confinement is not carefully limited" and "Foucha is not now entitled to an adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community." *Id.* Moreover, in contrast to the Bail Reform Act upheld in *Salerno,* the *Foucha* Court found that confinement under the Louisiana statute was not "strictly limited in duration" and in fact allowed an insanity acquittee to "be held indefinitely." *Id.* at

82, 112 S.Ct. 1780. Thus, the *Foucha* Court concluded:

" "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." ... The narrowly focused pretrial detention of arrestees permitted by the Bail Reform Act was found to be one of those carefully limited exceptions permitted by the Due Process Clause. We decline to take a similar view of a law like Louisiana's, which permits the indefinite detention of insanity acquittees who are not mentally ill but who do not prove they would not be dangerous to others."

*Id.* at 83, 112 S.Ct. 1780 (citation and footnote omitted). Similarly, the Supreme Court upheld the juvenile custody provisions at issue in *Flores,* in part, because "[t]he period of custody is inherently limited by the pending deportation hearing, which must be concluded with 'reasonable dispatch' to avoid habeas corpus," such that "[i]t is expected that alien juveniles will remain in INS custody an average of only 30 days." *Flores,* 507 U.S. at 314, 113 S.Ct. 1439 (citations omitted).

Like the statute that the Supreme Court held to be unconstitutional in *Foucha,* and unlike the statute that the Supreme Court upheld in *Salerno,* section 236(c) does not strictly limit the duration of mandatory detention. The overreaching nature of section 236(c) is demonstrated by comparison to the detention provisions under section 241(a), which provide for discretionary release if an alien is not removed within 90 days of an order of removal becoming administratively final. The court concludes that section 236(c) is excessive in relation to its purposes as applied to the petitioner, because it mandates the detention of the petitioner, a lawful permanent resident alien who may yet be allowed to remain permanently in the country, for four months and counting, without any exercise of discretion on the part of the INS or the Attorney General, while aliens who are no longer, and may be never been, lawful permanent residents and who will immi-

nently be removed may be released at the discretion of the Attorney General if they are not removed within three months.

Section 236(c) is also excessive in relation to its purposes because it does not provide for an adversary hearing in which the INS must convince a neutral decision-maker by clear and convincing evidence that no conditions of release for the petitioner can reasonably assure the safety of the community or any person. The respondents argue that mandatory detention without a bond hearing is not excessive in relation to its purposes because the aliens, like the petitioner, who are subject to section 236(c) have been convicted of serious crimes. This argument, however, cannot be squared with the regulatory, not punitive, purposes which section 236(c) detention and removal generally are designed to serve. As the *Rogowski* court noted, "[t]he Fifth Amendment does not permit punishment of criminal aliens a second time through the immigration laws." 94 F.Supp.2d at 185. Thus, while the petitioner's prior conviction might "carry weight as a predicting factor," the petitioner's conviction "cannot, alone, support complete denial of even the opportunity to request bail and be heard." *Id.*

Most importantly, section 236(c) is excessive in relation to its regulatory purposes because, unlike the Bail Reform Act, it does not entitle those who fall within the mandatory detention provision to a detention or bond hearing at all. Section 236(c) does not even create a presumption of detainability with the opportunity for the petitioner to rebut that presumption. As one district court quite reasonably concluded when faced with the same issue, "Congress' use of a blanket, irrefutable presumption is excessive in relation to its purpose of preventing flight and future crimes; a bail hearing could address the

individual detainee's danger to the community." *Welch,* 101 F.Supp.2d at 356.

The court is aware, as the respondents argue, that "'Congress regularly makes rules [for aliens] that would be unacceptable if applied to citizens'" and that "[g]overnmental conduct that may be considered 'shocking' when it serves to deprive the life, liberty or property of a citizen may not be unconstitutional when directed at an alien." *Doherty,* 943 F.2d at 209 (citation omitted). Thus, it may be argued that section 236(c) justifiably provides less safeguards than the Bail Reform Act pretrial detention provisions because the former applies only to aliens and the latter applies to United States citizens.

The Supreme Court, however, has held that "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Plasencia,* 459 U.S. at 32, 103 S.Ct. 321. Moreover, the petitioner remains eligible for section 212(c) relief and is not yet, and may never be, subject to an administratively final order of removal. Faced with the prospect of receiving the "act of grace" of section 212(c) relief and of maintaining his status as a lawful permanent resident alien, the petitioner may be able to rebut a presumption that he, as an alien convicted of an "aggravated felony," is a flight risk or a danger to the community.[3] However, section 236(c) establishes an irrebuttable presumption that every alien removable under section 1227(a)(2)(A)(iii) is a flight risk or a threat to the public, because it does not provide for any detention or bond hearing. The court finds that this irrebuttable presumption is not sufficiently narrowly tailored to serve the government interests which section 236(c) is designed to advance.

---

**3.** The district court's holding in *Avramenkov v. INS,* 99 F.Supp.2d 210 (D.Conn.2000), rejecting an as-applied substantive due process challenge to the section 236(c) mandatory detention provision, does not inform the court's analysis of the instant petition, because the

petitioner in *Avramenkov,* unlike Small, was not statutorily eligible for section 212(c) relief and therefore his "removal from the country is a virtual certainty." 99 F.Supp.2d at 215–16.

The respondents further argue that the holding in *Doherty* that Doherty's detention did not violate substantive due process dictates that the section 236(c) mandatory detention provision does not violate substantive due process. The court finds that Small's petition is distinguishable from *Doherty*, where the Second Circuit observed:

Moreover, from the outset of his detention, Doherty has possessed, in effect, the key that unlocks his prison cell. That is, if Doherty had agreed to deportation in the first place, he would not have been detained at MCC for the past eight years.... Because deportation was less attractive to him than his present course and because he has availed himself of the statutory mechanisms provided for aliens facing deportation, Doherty is subject to the countervailing measures Congress has enacted to ensure the protection of national interests.

943 F.2d at 212 (citation omitted). The petitioner in Doherty was under a final order of deportability for two years before the Second Circuit issued its decision and was ineligible for habeas relief under former section 1252(c) of Title 8. *Id.* at 210–11. Unlike the situation in *Doherty*, the petitioner in the instant case is statutorily eligible for discretionary relief from removal under section 212(c). It cannot fairly be said that Small holds "the key that unlocks his prison cell" so long as he is pursuing a ground for relief to which he is statutorily entitled to apply and which may allow him to lawfully remain permanently in this country. The petitioner in this case is not complaining of extended detention resulting from a procedural delay of his own making. In short, Small is not prolonging his own continued detention by postponing the inevitable. *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) ("A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs."). So long as the petitioner is statutorily eligible for section 212(c) relief, the court cannot assume that his request will be denied and that he will therefore be inevitably removed from this country.

For the reasons discussed above, the court concludes that the petitioner has a substantive due process right to be free from arbitrary confinement without a bond hearing while his removal proceedings are pending. Applying the *Salerno* test, the court concludes that the mandatory detention provision of section 236(c) is excessive in relation to the purposes behind the statute as applied to the petitioner, in view of the petitioner's status as a lawful permanent resident alien who is statutorily eligible for a section 212(c) waiver of removal. Thus, the section 236(c) mandatory detention provision violates substantive due process as applied to the petitioner. The court emphasizes that this holding is limited to the conclusion that the section 236(c) mandatory detention provision is unconstitutional as applied to this petitioner, who is a lawful permanent resident alien being detained without a bond hearing while awaiting a hearing on the section 212(c) relief from removal for which he is statutorily eligible.

**E. Procedural due process challenge to section 236(c)**

The petitioner also alleges that the section 236(c) mandatory detention provision violates his procedural due process rights because it forecloses any individualized determination of the petitioner's flight risk or dangerousness to the community while his removal proceedings are pending. "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 ... (1976). This requirement has traditionally been referred to as 'procedural' due process." *Salerno*, 481 U.S. at 746, 107 S.Ct. 2095.

To state a claim for a violation of procedural due process, "a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994) (citation omitted). Thus, for the plaintiff "to establish a procedural due process violation, [he] must: (1) identify a property right [or liberty interest], (2) establish that governmental action with respect to that property right [or liberty interest] amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." *Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir.1989) (citation omitted). In this context, it is well-settled that the court should " 'examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " *Valmonte*, 18 F.3d at 998 (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

The liberty interest at stake in the petitioner's procedural due process challenge to section 236(c) is the same as the petitioner raised on his as-applied substantive due process claim: a fundamental liberty interest in freedom from restraint without a detention or bond hearing during his removal proceedings. *See supra* at 312. To answer the second question, the Supreme Court has noted that "[d]ue process, as this Court often has said, is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Thus, "[t]o determine what procedural protections the Constitution requires in a particular case, we weigh several factors." *Id.* These factors are:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335, 96 S.Ct. 893.

"Applying this test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127, 110 S.Ct. 975 (citations omitted). "In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128, 110 S.Ct. 975 (citations omitted). Generally, " '[p]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases.' " *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir.2000) (quoting *Eldridge*, 424 U.S. at 344, 96 S.Ct. 893). "In other words, the requirement of a hearing or other procedural safeguard typically will not depend on the quantum of evidence possessed by the government in any one particular case." *Id.*

As to the first *Eldridge* factor, in the context of removal or deportation proceedings, the Supreme Court has recognized that a permanent resident alien's interest in freedom from restraint during removal proceedings "is, without question, a weighty one." *Plasencia*, 459 U.S. at 34, 103 S.Ct. 321. As the Court noted, an alien who is detained and ultimately removed "may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual." *Id.* (citations omitted). Of course, here the petitioner is not asserting a right not to be deported but the right to a detention hearing to assess his right to be free from custody during his removal proceedings.

On the other hand, the petitioner does seek to vindicate at his section 212(c) hearing his interest in residing freely in the United States indefinitely. Moreover, as the district court observed in *Zgombic,* "[p]utting the potential for section 212(c) relief aside, unless and until the decision regarding petitioner's removal becomes administratively final, it cannot be said with certainty that petitioner has no legal right to be in the United States." 89 F.Supp.2d at 236.

The Second Circuit has recently considered this first *Eldridge* factor in *Abdullah v. INS,* 184 F.3d 158 (2d Cir.1999), in relation to a procedural due process claim regarding aliens' alleged rights to interpreters in proceedings to adjudicate their applications for Special Agricultural Worker ("SAW") status. Here, the petitioner is a lawful permanent resident alien who is statutorily eligible for a waiver of removal under section 212(c) and who seeks freedom from mandatory detention while his removal proceedings, including the section 212(c) hearing, are pending. Absent a final order of removal, the petitioner maintains his status as a lawful permanent resident alien, with the constitutional status that accompanies the ties the petitioner has developed during his twenty-plus years of legal residence in this country. The petitioner therefore stands in the position of a person whom the government seeks to deprive of liberty or to inflict some significant mandatory change on the conditions of the individual's life, and not an individual who affirmatively initiates a proceeding seeking the benefits of a "generous" statutory exception. *See Abdullah,* 184 F.3d at 165 ("When government seeks to inflict punishment on an individual, or to deprive him of liberty or property or to inflict some significant mandatory change on the conditions of the individual's life, that individual's interest in being furnished with an interpreter at government expense is far greater than when the individual affirmatively initiates a proceeding seeking the benefits of a 'generous' statutory exception.").

Additionally, the petitioner asserts an interest in freedom from custody in order to facilitate a stronger showing of rehabilitation at his section 212(c) hearing. The BIA has "recognize[d] that it is more difficult for confined aliens to establish rehabilitation than for those who are at liberty...." *Matter of Roberts,* 20 I. & N. Dec. 294, 299 (BIA 1991). This interest in freedom from custody while awaiting a section 212(c) hearing is not preeminent since an alien's confinement "does not preclude [the BIA] from considering rehabilitation as a significant discretionary factor." *Id.* The interest in freedom from restraint pending a section 212(c) hearing is, however, particularly important for the petitioner, because "[d]rug offenders must present a showing of unusual or outstanding countervailing equities to obtain a waiver, particularly if the grounds for exclusion involved trafficking in drugs." *Correa v. Thornburgh,* 901 F.2d 1166, 1170 (2d Cir.1990) (citation omitted).

As to the second *Eldridge* factor, the court finds that the risk of erroneous deprivation of the petitioner's liberty interest under section 236(c) is slight where, as in *Avramenkov* and as is the case here, the petitioner does not dispute that he has a conviction for an "aggravated felony" and is covered by the operation of the section 236(c) mandatory detention provision. *See Avramenkov,* 99 F.Supp.2d at 216. In contrast to *Avramenkov,* however, the petitioner is eligible for section 212(c) relief and so it is not true that "additional procedural safeguards would be of little value to" the petitioner, since it is not the case, as it was in *Avramenkov,* that his "removal from the country is a virtual certainty." *Id.*

Finally, as to the third *Eldridge* factor, the court notes that the *Zgombic* court has well summarized the government's interest in maintaining section 236(c) mandatory detention without a detention hearing, including the function involved and the fiscal and administrative burdens that the addi-

tional or substitute procedural requirement would entail:

> "The government's interest in efficient administration of the immigration laws at the border [ ] is weighty." *Plasencia,* 459 U.S. at 34, 103 S.Ct. 321.... Accordingly, the government has an obvious, important interest in avoiding the necessity of holding parole hearings for all alien aggravated felons. Moreover, "it must weigh heavily in the balance [of the *Eldridge* factors] that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Id.* (citations omitted).

89 F.Supp.2d at 236. This court concludes that conducting a detention or bond hearing prior to the petitioner's section 212(c) hearing would impose little burden on the government.

Moreover, the court notes that the petitioner's procedural due process argument that his mandatory detention has occurred without due process is bolstered by the fact that section 236(c) provides no hearing process or individual determination at all of the justifications—including flight risk and threat to the community—that this lawful permanent resident alien should be mandatorily detained, except for the requirement of a finding, as the respondents note, that the petitioner is, in the absence of section 212(c) relief, statutorily removable and that the petitioner comes within the scope of section 236(c). Section 236(c) therefore contains no provisions for a detention hearing, of the sort entailed under the Bail Reform Act, or discretionary individual determinations, as was the case with prior INA detention provisions. *See Salerno,* 481 U.S. at 742, 107 S.Ct. 2095; *Carlson,* 342 U.S. at 538, 72 S.Ct. 525. Furthermore, as discussed at length above, section 236(c) does not contain any time limit on the length of an alien's mandatory detention, unlike the Bail Reform Act pretrial detention provisions upheld against a due process challenge in *Salerno.*

Under these circumstances, the factors in support of a detention or bond hearing outweigh the government's weighty interest in the efficient administration of the immigration laws. Accordingly, the court concludes that the application to the petitioner of the section 236(c) mandatory detention provision without a bond hearing, while the petitioner's section 212(c) request is pending, violates the petitioner's right to procedural due process.

## III. CONCLUSION

The Petition for Writ of Habeas Corpus [Dkt. No. 1] is granted. The respondents or their designees shall afford the petitioner a detention or bond hearing before an Immigration Judge within seven (7) days of the date this Order is issued.

**SO ORDERED.**