Rafal **ROGOWSKI,** a/k/a Ralph Rogowski, Petitioner,

v.

Janet **RENO,** et al., Respondents.

No. Civ. 3:99cv790(PCD).

United States District Court, D. Connecticut.

Oct. 28, 1999.

Michael J. Boyle, New Haven, Connecticut, Wanyong Austin, Immigrants' Rights Project of the American Civil Liberties Union, New York City, for plaintiff.

**RULING**

DORSEY, Senior District Judge.

Petitioner seeks a writ of habeas corpus claiming that he is illegally detained by the Immigration and Naturalization Service (INS). He moves for summary judgment to stay his deportation; remand his case to an Immigration Judge (IJ) for a hearing pursuant to former Immigration and Naturalization Act (INA) § 212(c), 8 U.S.C. § 1182(c); and order his release from INS administrative custody. The government moves to dismiss. Petitioner's motion for summary judgment is granted in part and the petition is granted as discussed below. The government's motions to dismiss are denied.

## I. BACKGROUND

Petitioner, a native and citizen of Poland, came to the United States as a refugee in 1984. His status was changed retroactively to Lawful Permanent Resident (LPR). Between November 22, 1995 and July 25, 1996, petitioner pled guilty to 17 felonies including larceny, burglary, tampering with a motor vehicle and trespass. Petitioner completed serving his sentences on April 23, 1999, when the INS took him into custody.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted. Pub.L. No. 104-132, 110 Stat. 1214. On November 25, 1996, the INS issued an Order to Show Cause charging petitioner with deportability as an aggravated felon based on his convictions for second degree larceny on November 22, 1995, and February 14, 1996. Immigration proceedings were formally initiated on January 29, 1997. At a hearing on September 23, 1997, petitioner admitted his alienage and conceded his deportability on the convictions. He attempted to apply for relief from deportation under former INA § 212(c), which gives the Attorney General discretion to allow criminal aliens who resided in the U.S. for at least seven years and were sentenced to five years or less to remain in the country. The IJ ordered petitioner deported to Poland and found him ineligible for relief under § 212 as amended by § 440 of AEDPA. The Board of Immigration Appeals (BIA) dismissed petitioner's appeal on the grounds that § 440 applied to petitioner, citing the Attorney General's decision in *Matter of Soriano*. Interim Decision 3289, 1996 WL 426888 (BIA 1996, A.G.1997).

The Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 (IIRIRA) was passed on September 30, 1996. Its transitional rules apply to deportation proceedings that commence between October 30, 1996, and April 1, 1997, when its permanent rules took effect. IIRIRA § 309(c)(1), (4), 110 Stat. 3009-625, -626. IIRIRA § 303, codified at INA § 236(c), 8 U.S.C. § 1226(c), mandates detention of aliens, including petitioner.

Petitioner initiated this suit by seeking a temporary restraining order *ex parte*, which was granted. Following a hearing, the parties agreed to stay deportation pending the conclusion of these proceedings. Because of uncertainty in the law, petitioner also filed a petition for review with the Court of Appeals. Petitioner re-

mains in administrative custody of the INS.

## II. DISCUSSION

### A. *Jurisdiction*

■ The government concedes jurisdiction to consider petitioner's challenges to AEDPA § 440(d), but argues that there is no jurisdiction to stay deportation. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (*"AAADC"*). The government does not explain why *AAADC* permits review of petitioner's claims but prohibits a stay of deportation. Jurisdiction over petitioner's claims presupposes authority to stay, as such review would be meaningless if petitioner were deported in the meantime.

The argument that there is no jurisdiction to challenge the constitutionality of petitioner's detention under INA § 236(c), 8 U.S.C. § 1226(c), is based on the grounds that he is held under INA § 241, 8 U.S.C. § 1231(a). As discussed below, petitioner is detained pursuant to INA § 236(c). The government concedes jurisdiction to review the constitutionality of that statute, as opposed to an administrative decision implementing the statute. 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien of any alien or the grant, revocation, or denial of bond or parole."); *see Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir.1999). IIRIRA § 306(c)(1), 8 U.S.C. § 1252(g), does not preclude review of the constitutionality of INA § 241 also. *AAADC*, 525 U.S. at 482–88, 119 S.Ct. at 943–45. Accordingly, there is jurisdiction over all petitioner's claims.

### B. *Application of AEDPA § 440(d)*

The IJ and BIA denied petitioner's application for relief under INA § 212(c), 8 U.S.C. § 1182(c), on the ground that AEDPA § 440(d) restricts the Attorney General's discretion to grant relief to aliens convicted of aggravated felonies.[1] Petitioner concedes that he is an alien described in AEDPA § 440(d). He argues that the statute does not apply to him because his conduct and convictions predate passage of AEDPA.

■ It is well settled that § 440(d) does not apply retroactively to proceedings begun before its effective date. *See Henderson v. INS*, 157 F.3d 106, 129 (2d Cir.1998), *cert. denied sub nom. Navas v. Reno*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *see also Goncalves v. Reno*, 144 F.3d 110, 125 (1st Cir.1998), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Sandoval v. Reno*, 166 F.3d 225, 234 (3d Cir.1999). "[S]tatutes are not ordinarily afforded retroactive effect unless 'Congress has clearly manifested its intent' to have them so applied." *Henderson*, 157 F.3d at 129 (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 (1997)). The language of the statute and the legislative history were found to indicate clearly no intention of retroactive effect. *Id.* at 129–30 (comparison of § 440(d) with other parts of AEDPA which explicitly provide for retroactivity "strongly indicates that Congress did not intend § 440(d) to apply retroactively"). However, *Henderson* did

---

1. INA § 212(c), as amended by AEDPA § 440(d), provides:

   Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.... This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense [specified therein]....

   The IIRIRA's permanent rules, applicable to aliens against whom proceedings were initiated after April 1, 1997, repeals § 212(c) relief altogether in favor of a new type of relief called "cancellation of removal." IIRIRA § 304(b); 8 U.S.C. § 1229(b). The latter provisions do not concern petitioner.

not consider petitioner's argument here, "that the statute should not apply to primary conduct—*i.e.*, criminal convictions—that occurred prior to April 24, 1996." *Id.* at 128 n. 28.

The government argues initially that § 440(d) does not have a retroactive effect on petitioner. A determination of retroactivity asks

> Whether the new provision attached new legal consequences to events completed before its enactment. The conclusion that a particular rule operates retroactively comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event..... [R]etroactivity is a matter on which judges tend to have sound instincts and familiar notions of fair notice, reasonable reliance and settled expectations offer sound guidance.

*Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quotation omitted). An alien, criminal or otherwise, has a strong legal interest in his continued residency. A criminal defendant at risk of deportation must be advised of the potential effect of a guilty plea on his alien status. *See Michel v. United States,* 507 F.2d 461, 465–66 (2d Cir.1974) (defense counsel must advise about the indirect consequences of a guilty plea, including deportation); *Mojica v. Reno,* 970 F.Supp. 130, 177 (E.D.N.Y. 1997), *aff'd sub nom. Henderson,* 157 F.3d at 106. Although discretionary, the long availability of relief under § 212 to criminal aliens such as petitioner creates a legal interest in the opportunity to apply for such relief. *See Francis v. INS,* 532 F.2d 268, 273 (2d Cir.1976). The threat posed by § 440's consequences to petitioner's prior convictions triggers a presumption against retroactivity, even though the original conduct was "morally reprehensible or illegal" when committed. *Landgraf,* 511 U.S. at 282–83, 114 S.Ct. 1483; *see also Gonçalves,* 144 F.3d at 128 (application of § 440(d) "takes away a form of relief that, while discretionary, is plainly substan-

tive"); *Dunbar v. INS,* 64 F.Supp.2d 47, 51–52 (D.Conn.1999) (granting petitions for habeas corpus compelling INS to permit petitioners to apply for § 212 relief); *but see LaGuerre v. Reno,* 164 F.3d 1035, 1041 (7th Cir.1998) ("It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation."). The interest at risk permits retroactive application only if clearly indicated in the text. *See Landgraf,* 511 U.S. at 272, 114 S.Ct. 1483.

The first resort of statutory construction, the language itself, clearly indicates that § 440(d) does not apply to petitioner's convictions. AEDPA contains six provisions which explicitly apply retroactively: §§ 401(f), 421(b), 413(g), 435(b), 440(f), and 441(b). *See Mojica,* 970 F.Supp. at 172–73; *Wallace v. Reno,* 24 F.Supp.2d 104, 110–112 (D.Mass.1998). Where Congress drafted the statute with such precision and clearly specified retroactivity for some provisions, the omission of similar language from § 440(d) reflects a lack of retroactive intent here. *See Lindh v. Murphy,* 521 U.S. 320, 328, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (Congress may have shown heightened concern for clarity with respect to retroactivity in AEDPA in light of recent retroactivity decisions). A pattern is discernible in that most retroactive provisions concern terrorist aliens, as opposed to § 440(d) which concerns criminal aliens. *See Pottinger v. Reno,* 51 F.Supp.2d 349, 359 (E.D.N.Y.1999) ("Congress drew a clear line of demarcation between alien terrorists and criminal aliens with regard to the retroactivity of the provisions affecting each group."). This distinction finds support in Congress's rejection of the Senate version, which applied retroactively to criminal aliens, in favor of the House version, which applied retroactively to terrorist aliens but

made no such specific provision for criminal aliens. "This sort of contrast in statutory language is particularly telling when it represents a decision by a conference committee to resolve a dispute in two versions of a bill, and the committee's choice is then approved by both Houses of Congress." *Henderson*, 157 F.3d at 129–30 (quotations omitted).

In support of retroactive application of § 440(d), the government first argues that the statute as a whole, and §§ 440(a), (c), (d), and (h) in particular, reveal an intent to streamline removal of criminal aliens. As discussed previously, Congress's provision for retroactive effect in other sections of AEDPA support a negative implication for § 440(d). Second, the government maintains that Congress could not have intended this result, as it will delay effectiveness of § 440(d) for potentially many years. Senator Abraham remarked before passage of the Senate version of the bill that "[t]hese expedited deportation provisions will apply to the almost half a million aliens currently residing in this country who are deportable because they have been convicted of committing serious felonies." 141 Cong.Rec. S7803–1, S7822 (June 7, 1995), *reprinted in* 1995 WL 338025. However, Congress adopted the House version of the bill, not the Senate version. Statements of intent, on the Senate floor, cannot supplant the language of the statute. *See, e.g., Darby v. Cisneros*, 509 U.S. 137, 147, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) ("Recourse to the legislative history of [the statute] is unnecessary in light of the plain meaning of the statutory text."). So long as the statute, no matter how poorly written or conceived, reads coherently and unambiguously, consideration is limited to the text. *See Dunbar*, at 55 (a "one line sentence could have avoided these and many other cases currently pending").

Allowing for the argument for possible statutory ambiguity, the presumption against retroactivity would control. *See*

*Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483 ("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic" (citations omitted)). This presumption would preclude deference to the Attorney General's interpretation. *See Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (deference to permissible agency interpretations appropriate where "the statute is silent or ambiguous with respect to the specific issue"). As the opportunity to seek § 212 relief constitutes an important legal interest, it would be fundamentally unfair to restrict such opportunity after the fact on the basis of an ambiguous statement. *See Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483. Accordingly, it is found that petitioner is entitled to apply for a waiver of deportation pursuant to former § 212(c).

## C. *Mandatory Detention*

### 1. *INA § 236 or 241?*

■ The parties dispute the statutory provision under which petitioner is held. The government argues that is INA § 241, 8 U.S.C. § 1231, on the ground that his order of deportation is administratively final. Petitioner contends that his order is subject to judicial review and thus he is held under INA § 236, 8 U.S.C. § 1226. INA § 241 requires detention of an alien during a 90 day period in which to effect the alien's removal.[2] 8 U.S.C. § 1231(a)(1)(A). The 90 days begins on the latest of the following: the "date the order of removal becomes administratively final" or "[i]f the removal order is judicially reviewed and if a court orders a stay of removal of the alien, the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(i) and (ii). If not removed within 90 days, the alien becomes subject to supervision. 8 U.S.C. § 1231(a)(1)(A) and (3). INA § 236 provides that the "Attorney General

---

**2.** The amendments to the INA replaced exclusion and deportation proceedings with one procedure for "removal." 8 U.S.C. § 1229a(a)(1).

shall take into custody any alien who is deportable by reason of having committed any offense covered in section ... 1227(a)(2)(A)(iii)," *pending* a decision whether he is to be removed. 8 U.S.C. § 1226(c).

Owing to deficiencies in the text of the statute, petitioner does not fall squarely into either provision. Petitioner is detained under one of these provisions. Petitioner argues that INA § 241 cannot apply to him because the court has not issued its final order. § 241(a)(1)(B)(ii) ("If the removal order is judicially reviewed and such review serves to stay the removal of the alien, the date of the court's final order."). Because § 241 does not apply, according to petitioner, he is held under § 236.

The government contends that IIRIRA, which contained these provisions as amended, bifurcated the detention system, and § 236 applies before deportation is ordered and § 241 applies post order. The government asserts that the "decision" referenced in § 236(a) is the administrative final order of the Attorney General or her delegates, at which point detention authority shifts to § 241. *See Matter of Joseph,* Int. Dec. 3387, 1999 WL 271357 (BIA 1999) (*en banc*). According to the government, the BIA order in March, 1999, causes § 241(a)(1)(B)(I) to apply to petitioner. However, that authority is contradicted by subsection 241(a)(1)(B)(ii). An order which is administratively final is subject to judicial review. A § 212(c) hearing to which petitioner is entitled, if successful, would void the order. Furthermore, the order of deportation is stayed by court order. Therefore, putting the two sections together, § 241 does not apply.

The government argues that the stay does not effect § 241 because the petition tolls the running of the 90 day period, citing to § 241(a)(1)(C).[3] The subsection *suspends,* not tolls, the period in the case of an alien's bad faith failure to cooperate in his removal. Petitioner has shown good faith here. *See* Transcript of Show Cause Hearing, May 25, 1999 ("Tr."), p. 4 (petitioner agreed to cooperate with the INS in the preliminary matters necessary for his removal). Second, the statute provides that the removal period does not begin until after judicial proceedings are complete, § 241(a)(1)(B)(ii). The government's reading would create the inconsistent result of suspending a removal period which has not begun. *See Adams v. Howerton,* 673 F.2d 1036, 1041 (9th Cir.1982) (sections of a statute should be interpreted not to conflict). Third, the government asserts that a new 90 day removal period commences at issuance of the court's final order. This reading finds no support in the text and conflicts with § 241(a)(1)(B)(ii), which provides that the only specified removal period commences at the court's final order. The government's interpretation does not comport with the language of the statute and is not entitled to deference. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.

The government argues that without its construction the INS would be deprived of authority to detain an alien following an administratively final order if the alien did not seek judicial review. Petitioner has asserted from the beginning his intention to establish his entitlement to a § 212 waiver of deportation. As long as petitioner could seek judicial review, the BIA order was not final. Furthermore, the statute now cuts off most avenues of judicial review such that this problem will not arise in the future. *See, e.g., AAADC,* 525 U.S. at 482–88, 119 S.Ct. at 943–45; *Parra,* 172 F.3d at 957. Accordingly, because

---

**3.** INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), entitled "Suspension of period", provides in full:

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

§ 241 explicitly does not apply to petitioner's case, he is deemed held under § 236.

## 2. Due Process Objections

■ Petitioner facially challenges § 236 on due process grounds. Petitioner possesses substantive and procedural due process rights. See Doherty v. Thornburgh, 943 F.2d 204, 208–9 (2d Cir.1991) (citing cases).[4] As a LPR, petitioner has formed those connections to this country which justify stronger constitutional status. See Landon v. Plasencia, 459 U.S. 21, 33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly."); cf. Mathews v. Diaz, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (due process rights extend even to aliens "whose presence in this country is unlawful."). Petitioner has a liberty interest in freedom from arbitrary confinement. See Doherty, 943 F.2d at 209 ("a substantive due process right to be free of arbitrary confinement pending deportation proceedings"); St. John v. McElroy, 917 F.Supp. 243, 250 (S.D.N.Y. 1996) (freedom from detention is "a liberty interest ... of the highest constitutional import").

Congress wields plenary control over immigration. See Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). "[O]ver no conceivable subject is the legislative power of Congress more complete." Id. This broad power allows little judicial review of immigration policy. See Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments, largely immune from judicial control").

As a result, "Congress regularly makes rules that would be unacceptable if applied to citizens." Mathews, 426 U.S. at 80, 96 S.Ct. 1883.

Petitioner's objection to his detention under § 236 "challeng[es] the method by which the immigration statutes are implemented." Martinez v. Greene, 28 F.Supp.2d 1275, 1281 (D.Colo.1998). Because petitioner raises a procedural, rather than policy, issue, he does not challenge Congress's plenary authority over immigration. "[T]he plenary authority of Congress over aliens under Art. I, § 8, cl. 4 is not open to question, but what is challenged here is whether Congress had chosen a constitutionally permissible means of implementing that power." INS v. Chadha, 462 U.S. 919, 940–41, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

Determination of petitioner's request for a bail hearing on due process grounds "must begin with a careful description of the asserted right". Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (citing cases). Petitioner asserts the right to be free of bodily restraint without an opportunity to be heard regarding bond. Petitioner's detention under § 236 gives rise to a stronger liberty interest than detention under § 241 would have allowed. As the decision regarding petitioner's deportation is not administratively final, it cannot be said that petitioner has no legal right to be in the United States. Cf. Parra, 172 F.3d at 958 (petitioner's "interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country").[5] Moreover, while § 241 guar-

---

4. The Fifth Amendment provides that "No person shall ... be deprived of life, liberty or property without due process of law." U.S. Const. amend. V (emphasis added). The term person "does not differentiate between citizens and non-citizens, but is broad and inclusive." Doherty, 943 F.2d at 208.

5. Petitioner here, like petitioner in Parra, has conceded deportability on the basis of his felony convictions. It is not clear that petitioner in Parra could seek a § 212 waiver of deportability. As discussed above, although a matter of the Attorney General's discretion, petitioner presents a strong case for entitlement to such a waiver. Thus, while formally "an act of grace", INS v. Yang, 519 U.S. 26, 30, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996) (citation omitted), petitioner has a cognizable right to liberty in the United States.

antees a bail hearing after 90 days if deportation has not occurred, petitioner's detention under the present statute could continue indefinitely. *See Martinez,* 28 F.Supp.2d at 1283 ("petitioner's private interest is great—the right to be free of indefinite and possible long-term detention pending a deportability determination"). Petitioner's status as a LPR of 15 years also distinguishes his case from those of aliens who entered the country illegally. *See Doherty,* 943 F.2d at 205 (denial of bail for criminal alien who entered country with a false passport and contested return to country of conviction for eight years); *Gisbert v. U.S. Attorney General,* 988 F.2d 1437, (5th Cir.1993) (indefinite detention for Mariel Cubans who were never legally admitted and committed crimes while on immigration parole). Petitioner thus possesses a limited right to be in the country in conjunction with his due process right to be free of arbitrary restraint.

The government urges adoption of the lower level of substantive due process scrutiny applied in *Flores.* 507 U.S. at 306, 113 S.Ct. 1439 (challenge to INS's "legal custody" of alien juveniles (*Id.* at 298, 113 S.Ct. 1439)). *Flores* did not involve the right to be free of physical restraint "in the sense of … barred cells, …. [n]or even in the sense of a right to come and go at will," since all youths are in custody. *Id.* (citing *Schall v. Martin,* 467 U.S. 253, 265, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)). Petitioners in *Flores* asserted the right of a child without an available relative and in government custody to be placed in the care of a private rather than government custodian. *Id.* Petitioner's substantive due process claim implicates the test employed in *United States v. Salerno,* involving a challenge to detention provisions of the Bail Reform Act of 1984. 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (government permitted to hold arrestees charged with certain serious felonies without bond if safety risk established at an adversary hearing).

*Salerno* permits mandatory detention if one, the statute authorizing such detention is regulatory and not punitive; and two, the statute is not excessive in relation to its purposes. 481 U.S. at 747, 107 S.Ct. 2095. "Deportation is a not a criminal proceeding and has never been held to be punishment." *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The inquiry concerns the second factor, whether the imposition on petitioner's right is "excessive in relation to the regulatory · goal Congress sought to achieve." *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095. Congress states several reasons for the IIRIRA mandatory detention provisions: (1) protecting the public from potentially dangerous criminal aliens; (2) preventing aliens from absconding during removal proceedings; (3) correcting procedures under which twenty percent of criminal aliens released on bond did not report for deportation hearings; and (4) restoring public faith in the immigration system. *See* S.Rep. No. 104–48, *reprinted in* 1995 WL 170285 (Leg.Hist.) at 1–6, 9, 18–23. These goals are reasonable and legitimate. Nevertheless, they do not permit the infringement prescribed by Congress.

The primary risk arises from the twenty percent of criminal aliens who abscond during proceedings. Eighty percent do not abscond. Petitioner asserts that he is not a flight risk. The statute's flaw is that it does not allow petitioner to substantiate this assertion at a hearing. A hearing presents a readily available, less restrictive means for the government to achieve its purposes. *See Kim v. Schlitgen,* No. C 99–2257, 1999 U.S.Dist. LEXIS 12511, at *12 (N.D.Cal. Aug. 10, 1999). Due process does not allow attribution to a large, diverse group characteristics demonstrated to be applicable to only a small number. *See Carlson,* 342 U.S. at 538, 72 S.Ct. 525. Detention of aliens and others have been upheld on account of some discretion or the existence of another opportunity for relief. *See, e.g., Carlson,* 342 U.S. at 538, 72 S.Ct. 525 (affirming Attorney General's decision to deny bail to Communist aliens as within his discretion); *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095 (upholding Bail Reform Act which entitled arrestee to a

prompt adversarial hearing); *Doherty,* 943 F.2d at 208 (affirming denial of bail to criminal alien after hearing and application for redetermination of bond); *Gisbert,* 988 F.2d at 1440 (upholding indefinite detention after criminal aliens violated law while on immigration parole). Section 236, in contrast, allows neither a hearing nor untrammeled discretion to the Attorney General—in short, no provisions to guarantee due process.

The government argues that there is a lesser risk of error, and that due process concerns consequently are reduced, because mandatory detention applies only to aliens convicted of felonies. Conviction is offered as a sufficiently reliable factor that a hearing or other such measure is unnecessary. *See Galvez v. Lewis,* 56 F.Supp.2d 637, 647 (E.D.Va.1999). Removal serves a regulatory, not criminal purpose. The Fifth Amendment does not permit punishment of criminal aliens a second time through the immigration laws. Prior convictions carry weight as a predicting factor but cannot, alone, support complete denial of even the opportunity to request bail and be heard. Prior convictions could be a factor to be considered on the merits in a hearing which would allow petitioner to put forth any countering factors. If prior convictions are allowed to control, petitioner is denied the opportunity to do so.

This is not a case where petitioner "has the keys [to his cell] in his pocket." *Parra,* 172 F.3d at 958. Until a § 212 waiver is determined, this country remains petitioner's home. Petitioner is entitled to an opportunity to demonstrate his claim to bail. As precluded by § 236, it is found to be unconstitutional as applied to petitioner. The unusual circumstances of petitioner's case preclude judgment as to petitioner's facial challenge to the statute. *See Salerno,* 481 U.S. at 745, 107 S.Ct. 2095 ("the challenger must establish that no set of circumstances exists under which the [statute] would be valid").

Petitioner also asserts a procedural due process violation. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As petitioner raised his substantive due process challenge on essentially procedural grounds, i.e., the lack of a hearing or other process, the latter argument simply restates the former. *See Flores,* 507 U.S. at 308, 113 S.Ct. 1439. In any event, as § 236 is unconstitutional as applied to petitioner on substantive due process grounds, it is unnecessary to consider petitioner's procedural due process argument.

## III. CONCLUSION

It is found that AEDPA § 440(d) does not apply to petitioner on grounds of retroactivity. Petitioner is therefore entitled to seek a waiver of deportation under former INA § 212(c). It is also found that INA § 236, 8 U.S.C. § 1226, not INA § 241, 8 U.S.C. § 1231, applies to petitioner. The statute is unconstitutional as applied to petitioner. He is entitled to a bond hearing before the INS to determine his eligibility for bail.

## ORDER

Petitioner's petition for a writ of habeas corpus [Dkt. No. 1] is GRANTED. A writ of habeas corpus shall ISSUE. Petitioner is found to be detained illegally. It is hereby ORDERED that the INS convene a hearing to consider petitioner's eligibility for bail within 10 days or discharge petitioner from custody. Petitioner's case is remanded to the Immigration Court, Executive Office for Immigration Review, so that petitioner may apply for a waiver under INA § 212. Petitioner's order of deportation is stayed during the pendency of those proceedings.

Petitioner's motions for temporary restraining order [Dkt. No. 4] and for order to show cause [Dkt. No. 5] are DENIED as moot. Respondent's motion to dismiss [Dkt. No. 10] is DENIED. Petitioner's motion for summary judgment [Dkt. No. 18] is GRANTED as consistent with this

ruling. Respondent's motion to dismiss [Dkt. No. 19] is DENIED.

SO ORDERED.