**BI ZHU LIN, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**No. 3:01CV1922(JBA).**

United States District Court, D. Connecticut.

Feb. 14, 2002.

Raymond C. Bliss, Baker, O'Sullivan & Bliss, PC, Wethersfield, CT, Theodore N. Cox, New York City, for petitioner.

Deborah R. Slater, U.S. Attorney's Office, Hartford, CT, for respondent.

### *Memorandum of Decision*

ARTERTON, District Judge.

Petitioner Bi Zhu Lin seeks a writ of habeas corpus ordering her release on bond or ordering Respondent to conduct an individualized bond hearing. She alleges that her continued detention pursuant to Immigration and Nationality Act ("INA") § 236(c)[1] is violative of her Fifth Amendment right to due process of law.[2] For the reasons set out below, the Court directs that a bond hearing be held forthwith.[3]

### I. Factual Background

Bi Zhu Lin is thirty-seven year old native and citizen of the People's Republic of China who fled China after she was forced by family planning authorities to abort her third pregnancy. *See* Oral Decision of the Immigration Judge (July 18, 2001), attached as Ex. 2 to Govt's Response [Doc. # 9] ("IJ Decision"), at 6. Lin entered the United States as a political asylum applicant on May 30, 1992, was granted asylum on June 14, 1993, and became a lawful permanent resident on June 1, 1994. *See* Notice to Appear in Removal Proceedings Under Section 240 of the Immigration Act, attached as Ex. 1 to Govt's Response [Doc. # 9] ("Notice to Appear"). Lin's husband,

1. 8 U.S.C. § 1226(c). For clarity, further references to the statute at issue will reference the statute's internal numbering system rather than that of the codified version.

2. The Court has jurisdiction pursuant to 28 U.S.C. § 2241, as Lin claims that she "in custody in violation of the Constitution ... of the United States." *See INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2278, 150 L.Ed.2d 347 (2001); *Kim v. Ziglar,* 276 F.3d 523, 526 (9th Cir.2002) (district court had jurisdiction under 28 U.S.C. § 2241 over claim that detention without bail pursuant to INA § 236(c) was unconstitutional).

3. Lin also claims the right under *Mapp v. Reno,* 241 F.3d 221 (2d Cir.2001), to have this Court set bond during the pendency of the Court's consideration of her § 2241 petition. In light of the Court's order, the *Mapp* request is moot.

who entered the United States with her, disappeared in 1998. *See* IJ Decision at 2. Lin had another child after immigrating to the United States, so she has three children and two sisters living in the United States.

On June 25, 1999, Lin pled guilty to conspiracy to collect extensions of credit by extortionate means, in violation of 18 U.S.C. § 894, for her involvement in an alien-smuggling operation. *See* Judgment, *United States v. Lin,* CR98–01132(CBA), (E.D.N.Y. June 25, 1999), attached as Ex. 3 to Govt's Response [Doc. # 9] ("Judgment"). She was sentenced to thirty-seven months' imprisonment, to be followed by two years' supervised release. *Id.* Upon completion of her thirty-seven month sentence on July 19, 2001, Lin was transferred to the custody of the Immigration and Naturalization Service. *See* Notice to Appear. According to the INS, Lin was eligible for removal as an "aggravated felon," under INA § 237(a)(2)(A)(iii). *Id.*

At her hearing,[4] the immigration judge ("IJ") determined that it was more likely than not that if Lin was returned to China, she would be forcibly sterilized. *See* IJ Decision at 5–6. On that basis, Lin claimed three grounds of eligibility for relief from deportation: political asylum, withholding of removal, and a claim based on the Convention Against Torture[5] ("Convention" or "Torture Convention"). *See* IJ Decision at 2–3. The IJ denied her first two claims, reasoning that as an aggravated felon, she was ineligible for either political asylum or withholding of removal under current law because her conviction was for a "particularly serious crime," even if it was likely that she would be forcibly sterilized upon return. *Id.* The IJ found in Lin's favor on the Torture Convention claim, however, reasoning that forced sterilization was torture under the Convention, and that because Lin would likely be tortured if returned to China, the Convention prohibited her return to China. *Id.* at 5–6; *see* 8 C.F.R. § 208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [the Convention] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.").

The Government appealed the IJ's decision in favor of Lin on the Convention claim to the Board of Immigration Appeals ("BIA"), where the appeal is still pending.[6] Throughout the proceedings and up to the present time, Lin has remained in INS custody. She requested a bond determi-

---

**4.** The hearing was held before the Immigration Court of the Department of Justice Executive Office of Immigration Review. "The Executive Office for Immigration Review was created on January 9, 1983, through an internal Department of Justice reorganization which combined the Board of Immigration Appeals with the Immigration Judge function previously performed by the Immigration and Naturalization Service." See Executive Office of Immigration Review Background Information, available at *http://www.us-doj.gov/eoir/background.htm* (abbreviations omitted).

**5.** Convention against torture and other cruel, inhuman or degrading treatment or punish-

ment, 23 I.L.M. 1027 (1984), as modified 24 I.L.M. 535 (1985); adopted by the U.N. General Assembly Dec. 10, 1984, entered into force June 26, 1987, ratified by United States Oct. 21, 1994, 34 I.L.M. 590, 591 (1995), and entered into force for the U.S. Nov. 20, 1994. Article 3 of the Convention provides: "No State Party shall ... extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."

**6.** Lin has cross-appealed the IJ's rulings denying her claims for asylum and withholding of removal.

nation on July 19, 2001, but the request was summarily denied on September 5, 2001, using a pre-printed form. *See* Order of the Immigration Judge, September 5, 2001, attached as Ex. 6 to Govt's Response [Doc. # 9] ("Hearing Denial"). The basis for the denial, evidenced by a check mark on the corresponding line, was as follows: "Respondent has a final order of conviction for an offense within the scope of section 236(c)(1) of the Act. Therefore, the Court lacks jurisdiction to redetermine the respondent's custody status. *See* 8 C.F.R. § 3.19(h)(2)(i)(D) (1999)." In the handwritten summary of facts, the IJ noted that Lin has already been granted relief under the Torture Convention. *Id.*

After the IJ declined to consider bail in her case, Lin petitioned this Court under 28 U.S.C. § 2241 for a writ of habeas corpus. She alleges that § 236(c) of the Act (the basis for the IJ's denial of her request for a bond hearing) is unconstitutional, and she asks the Court to order Respondent Ashcroft to release her on bond, or in the alternative, to hold an individualized bond hearing.

II. Statutory Provision at Issue

Section 236(c) of the INA provides as follows:

(1) The Attorney General shall take into custody any alien who—. . . (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii) [multiple crimes of moral turpitude], (A)(iii) ["Aggravated felony"], (B) ["Controlled substances"], (C) ["Certain firearm offenses"], or (D) ["espionage-related crimes]" of this title, . . . (2) Release—The Attorney General may release an alien described in paragraph (1) *only if* the [alien has been admitted into the witness protection program], . . . and the alien satisfies the Attorney General that the alien will not pose a

danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

INA § 236(c) (emphasis added). It is not disputed that Lin does not fall into the limited exception for participants in the Witness Protection Program or that she is being detained during the pendency of her appeal under the authority of § 236(c).

While INA § 236(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review [and n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," the Government concedes that § 236(e) does not preclude constitutional challenges to § 236(c) itself. Govt's Response [Doc. # 9] at 12, *citing Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) and *Galvez v. Lewis*, 56 F.Supp.2d 637, 641 & 641 n. 1 (E.D.Va.1999).

As characterized by the Government, the mandatory detention provision is part of "an interrelated statutory structure designed to put certain criminal aliens on a fast-track for removal":

Detention pending removal proceedings is mandated, discretionary relief from removal for aggravated felons is barred, judicial review is restricted, and a 90–day time limit is given by way of instruction to INS for physical removal after a final administrative order is entered. These other provisions are intended to work with the detention provision by (1) decreasing the amount of time criminal aliens are detained without bond and (2) helping speed the process along.

Govt's Response at 9 (citations omitted).

Lin argues that § 236(c)'s ban on consideration of bail except for aliens in the witness protection program "is not ration-

ally related to any compelling interest the government has in controlling the immigration and naturalization of aliens coming into our country since it makes no exception for persons of long-standing residence, or as in this case, persons who entered seeking asylum from persecution and whose likelihood of returning to immigration court to obtain such relief is, or can be determined to be, extremely high." Petitioner's Mem. Supp. [Doc. # 2] at 4–5. In particular, Lin argues that because an immigration judge has already found that she qualifies for relief from immediate deportation under the Torture Convention, and awaits disposition of the Government's appeal by the BIA, bail is appropriate as she has little incentive for flight and extensive familial connections to the United States.

III. Immigration, Due Process and Deference to Congress

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 307, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *accord Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 2500, 150 L.Ed.2d 653 (2001) ("the Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent") (citations omitted). "[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Substantive due process protects an alien from governmental infringement upon certain "fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

Lin argues that as applied to her, a lawful permanent resident, § 236(c)'s provision for detention without an individualized determination of bail impermissibly infringes on her fundamental liberty interest in freedom from arbitrary confinement. The Government, in turn, urges the Court to defer to Congress's express decision, enacted into law as INA § 236(c), to automatically deny all bail requests of aliens facing deportation as a result of their criminal convictions. The Government argues that as the legislation was enacted pursuant to Congress's plenary power over immigration matters, judicial deference must be "at its apogee." Govt's Response at 13, *quoting Weiss v. United States,* 510 U.S. 163, 177, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

Faced with the same argument in *Zadvydas,* the Supreme Court determined that even given the high degree of deference afforded to Congress in the exercise of its immigration powers, Congress's power "is subject to important limitations." 121 S.Ct. at 2501, *citing INS v. Chadha,* 462 U.S. 919, 941–942, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (Congress must choose "a constitutionally permissible means of implementing" that power); *The Chinese Exclusion Case,* 130 U.S. 581, 604, 9 S.Ct. 623, 32 L.Ed. 1068 (1889) (congressional authority limited "by the Constitution itself and considerations of public policy and justice which control, more or less, the conduct of all civilized nations"). The Supreme Court in *Zadvydas* was mindful of Congress's broad power in this area. *See* 121 S.Ct at 2501 ("we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions") and *id.* at 2502 ("the cases before us do not require us to consider the political branches' authority

to control entry into the United States [so] we leave no 'unprotected spot in the Nation's armor" '), *quoting Kwong Hai Chew v. Colding*, 344 U.S. 590, 602, 73 S.Ct. 472, 97 L.Ed. 576 (1953).

Despite this recognition of Congress's special prerogative in matters concerning immigration and naturalization, *Zadvydas* narrowed the congressionally-sanctioned possibility of indefinite detention under one provision of the INA by reading in an implicit reasonableness limit on the potential duration of detention. Inasmuch as the provision limited by *Zadvydas* was one part of the "interrelated statutory structure designed to put certain criminal aliens on a fast-track for removal," Govt's Response at 9, which was enacted as part of the sweeping immigration reform that took place in 1996 and that contains the provisions at issue in Lin's case,[7] the Government's arguments regarding the necessity of placing this provision in context, while strong, are not compelling. In fact, in *Zadvydas* even the strong reason for deference because "sensitive repatriation negotiations" might be impacted by the Court's decision, which might require "a habeas court's efforts to determine the likelihood of repatriation" with "appropriate sensitivity," were insufficient to alter the outcome. 121 S.Ct. at 2502. Here, in contrast, the availability of an individualized determination of bond and the concomitant possibility of an alien's release on conditions *into the United States* raises no such concerns.

Applying the analysis of *Zadvydas*, this Court, while duly cognizant of Congress's broad policy powers in this area, must nonetheless determine whether the means Congress chose to implement its policy,

INA § 236(c)'s provision for detention without possibility of an individualized bail determination, comports with the fundamental protections to which Lin is entitled under the Constitution. The Third Circuit recently applied this analysis of deference to Congress in *Patel v. Zemski*, 275 F.3d 299 (3d Cir.2001), in which it concluded that INA § 236(c) was unconstitutional:

> The Supreme Court recently addressed [the level of deference to be accorded Congress's plenary power to create immigration law] in *Zadvydas* and distinguished between the deference that must be afforded to immigration policies and the more searching review of the procedures used to implement those policies. The issue in the present case implicates the latter, the means by which Congress effects its determinations regarding who should be deported and on what basis, not the actual criteria for deportation.

275 F.3d at 308, *citing Zadvydas*, 121 S.Ct. at 2501–2502 and *Chadha*, 462 U.S. at 940–941, 103 S.Ct. 2764.

### IV. INA § 236(c) as Applied to Lin

█ As a lawful permanent resident, Lin retains the right to reside permanently in the United States until a final administrative order of removal is entered. *Kim v. Ziglar*, 276 F.3d 523, 528 (9th Cir.2002), *citing* 8 U.S.C § 1101(a)(20) and 8 C.F.R. § 1.1(p) ("The term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Such status terminates upon entry of a final adminis-

---

**7.** *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA") § 303 (amending INA § 236 to create statutory scheme at issue in Lin's case) and IIRIRA § 305 (amending INA § 241 to create the statutory scheme limited by *Zadvydas*).

trative order of exclusion or deportation."). This fact is acknowledged by the Board of Immigration Appeals itself. *See In re Mendoza–Sandino,* Interim Dec. 3426, 2000 WL 225840 (BIA 2000) ("A lawful permanent resident who commits a removable or deportable offense remains a lawful permanent resident until an administratively final order of removal or deportation deprives him of that status."); *cf. also Kim,* 276 F.3d at 528 ("Lawful permanent resident aliens are the most favored category of aliens admitted to the United States"). In Lin's case, the IJ declined to enter an order of removal because he found that Lin was eligible for relief under the Torture Convention and was thus not removable (so long as she faced forced sterilization if returned to China). IJ Decision at 5–6. Thus, Lin's "right to remain in the United States is a matter of law, not grace." *Kim,* 276 F.3d at 528.

Lin therefore retains the constitutionally-protected liberty interests that flow from her status as a lawful permanent resident. These liberty interests include the "substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh,* 943 F.2d 204, 209 (2d Cir. 1991); *accord Zadvydas,* 121 S.Ct at 2498 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process clause] protects"), *citing Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).

In light of Lin's fundamental liberty interest in freedom from "government custody, detention or other forms of restraint," *Zadvydas,* 121 S.Ct at 2498, "government detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate proce-

dural safeguards, or, in certain special and narrow non-punitive circumstances where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 2499–2450, *citing United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Foucha,* 504 U.S. at 80, 112 S.Ct. 1780; and *Kansas v. Hendricks,* 521 U.S. 346, 356, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (quotations omitted). Because Lin's detention is civil and non-punitive in purpose and effect, *Kim,* 276 F.3d at 530 ("it is clear that [INA § 236(c) ] is civil and regulatory, not criminal or punitive [because] it is designed to ensure that aliens are removed, and it is established that removal proceedings are civil"), *citing INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *see also Zadvydas,* 121 S.Ct. at 2492, the Court must analyze the detention provision to determine whether the Government has provided a special justification that would justify Lin's detention without consideration of bond.

Here, the Government justifies INA § 236(c) as an appropriate response to the "immigration enforcement concerns of Congress and the Attorney General over the past decade [regarding] widespread recidivism and abscondment." Govt's Response at 15. The Government's brief sets out the following statement of Senator Spencer Abraham, a principal proponent of IIRIRA, made during debate over the law:

> Needless to say, the majority of criminal aliens released from custody do not return for their [deportation] hearings. Having been returned to the streets to continue their criminal predation on the American citizenry, many are rearrested soon after their release. Thus, for example, a recent study by the GAO found that 77 percent of noncitizens convicted

of felonies are rearrested at least one more time. In Los Angeles County alone, more than half of incarcerated illegal aliens are rearrested within one year of their release.

141 Cong. Rec. S7803, 7823 (daily ed. June 7, 1995).

From the general proposition that Congress was concerned about "criminal aliens" absconding during the pendency of their deportation proceedings, the Government argues that "[t]here can be no question that removing criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are legitimate and reasonable goals." Govt's Response at 17, *citing Salerno*, 481 U.S. at 747, 107 S.Ct. 2095 (crime prevention), and *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (flight risk).

 While the Government is certainly correct that the interests identified, including prevention of crime and reduction of flight, are important goals, any infringement on the fundamental liberty interests at stake in this case must be "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Lin's case, however, shows that tailoring the infringement by individualized review affords the INS a means of determining the existence and extent of her risk for flight or criminal activity, rather than relying on a broad general belief that "criminal aliens" will abscond or commit further crimes. Lin has family ties to the United States, and having won deferral from removal, she could be found to have decreased incentive to flee. Despite this pos-

ture, she remains incarcerated with no possibility of bond, without regard to the strength of the Government's appeal and with no consideration of her personal circumstances. *See Rogowski v. Reno*, 94 F.Supp.2d 177 (D.Conn.1999) (individualized bond hearing "presents a readily available, less restrictive means for the government to achieve its purposes") (citation omitted). Since Lin will avoid immediate[8] deportation if the Government fails to persuade the BIA to reverse the immigration judge, her case is readily distinguishable from those upholding § 236(c) as applied to aliens who were virtually certain to be deported. *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999); *Avramenkov v. INS*, 99 F.Supp.2d 210, 216 (D.Conn.2000).

Instead, Lin's status as *appellee* before the BIA makes her claim of constitutional deprivation absent any individualized bail determination even stronger other cases finding INA § 236(c) unconstitutional and granting individualized bond hearings. *See Kim*, 276 F.3d at 528 (ordering bond hearing for alien convicted of aggravated felony who was awaiting a decision by the immigration judge regarding his removability); *Patel*, 275 F.3d at 304 (ordering bond hearing for alien convicted of aggravated felony who was appealing the immigration judge's decision ordering him removed from the United States); *Rogowski*, 94 F.Supp.2d at 185 (D.Conn.1999) (ordering bond hearing for alien who may have been entitled to discretionary relief under now-repealed INA § 212(c)); *Small v. Reno*, 127 F.Supp.2d 305 (D.Conn.2000) (same).

---

**8.** According to the Government, even if she prevails on her Torture Convention claim before the BIA, Lin can only "remain in this country as long as she faces forced parental planning practices in China. This situation may change should the political climate change in China or when she is no longer of child bearing age." Govt's Response [Doc. # 9] at 37.

## V. Conclusion

Lin's fundamental liberty interests are unconstitutionally infringed by INA § 236(c) because the statute categorically prohibits bond, thus infringing on Lin's protected interest in freedom from incarceration, where a less-restrictive individualized bond determination is readily available. While she has no absolute right to liberty or to remain in this country, substantive due process requires an individualized hearing on the necessity of detaining her during the pendency of the Government's appeal of the immigration judge's ruling in her favor under the Convention Against Torture.

Inasmuch as Lin is presently being held without the possibility of such an individualized bond determination, she is being held "in custody in violation of the Constitution ... of the United States." 28 U.S.C. § 2241(c)(3). Accordingly, the Court GRANTS Lin's Petition for a Writ of Habeas Corpus [Doc. # 1] and directs that she be released from custody unless Respondent makes an individualized bond determination within ten (10) days of the docketing of this order. *See Patel*, 275 F.3d at 315 (ordering release of petitioner "unless the government makes a prompt individualized determination whether the continued detention of Patel is necessary to prevent risk of flight or danger to the community").

IT IS SO ORDERED.