**Nagah RADY, Petitioner**

v.

**John ASHCROFT, U.S. Immigration and Naturalization Service, Steven Farquharson, District Director, and Gary Cote, Officer in Charge Respondents**

**No. 3:02–CV–00412(EBB).**

United States District Court, D. Connecticut.

March 15, 2002.

Michael J. Boyle, Jennifer S. Rodriguez, North Haven, CT, for Nagah Rady, petitioner.

James K. Filan, Jr., U.S. Attorney's Office, Bridgeport, CT, for John Ashcroft, Atty Gen, US, INS, Steven J. Farquharson, Dist Dir, INS, Gary Cote, Ofcr in Charge, INS, respondents.

### Ruling on Petition for Writ of Habeas Corpus and Application for TRO

ELLEN B. BURNS, Senior District Judge.

The Petitioner, Nagah Rady (hereinafter "Petitioner"), is currently subject to mandatory detention by the Immigration and Naturalization Service (hereinafter "Respondents"). The Petitioner requests the Court to issue a writ of habeas corpus ordering the Respondents to provide her with a bond hearing before an Immigration Judge to determine whether she poses a danger to society or is a flight risk. In addition, the Petitioner seeks the issuance of a TRO to prevent the Respondents from transferring her from Connecticut to Louisiana.

## I. FACTUAL BACKGROUND

The Petitioner, a native and citizen of Egypt, entered the United States most recently in 1993 as a visitor. She has lived in the United States with her family since the 1980s, living in the New York City area and working on a farm and as a nurse's assistant. She has three children, all of whom are citizens or lawful permanent residents of the United States. Jihan

Mohamed, the United States citizen daughter of the Petitioner, filed an immigrant petition for permanent residence for her mother with the INS.

According to the Notice to Appear, the application for status as a permanent resident was denied on September 29, 1999. According to the Petitioner, her petition for permanent residence was originally approved, but the next phase of her application, adjustment of status, was denied for abandonment due to an error in how a change of address was reported. Respondents contend that Petitioner's application for status as a permanent resident was ultimately denied because the Petitioner was a public charge. Counsel for Petitioner claims that a renewed application for status as a permanent resident is now pending. Whatever the reason for the denial of Petitioner's original application and regardless of whether Petitioner has another application pending, as of today's date the Petitioner is not a lawful permanent resident of the United States and never has possessed such a status.

On July 20, 2001, the Petitioner was convicted of the offense of Conspiracy to Traffic in and Use of Unauthorized Access Devices, in violation of 18 U.S.C. §§ 1029(b)(2) and (c)(1)(a), and sentenced to six months at Danbury FCI. Upon the completion of her federal sentence at Danbury FCI, the INS placed the Petitioner in detention at the York Correctional Institute in Niantic, Connecticut. Section 236(c) of the Immigration and Naturalization Act, 8 U.S.C. §§ 1101–1537 ("INA"), requires mandatory detention of certain aliens upon their release from incarceration. In pertinent part, the statute provides:

(1) Custody. The Attorney General shall take into custody any alien who—... (b) is deportable by reason of having committed an offense covered in section 1227(a)(2)(A)(iii) ["Aggravated Felony"]

of this title when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned for the same offense again. 8 U.S.C. § 1226(c). The statute provides only limited circumstances when an alien subject to mandatory detention may be released, such as when the alien has been admitted to the Witness Protection Program. Because the Petitioner does not fall within the limited release provision of Section 1226(c)(2), she is being detained without bond pursuant to Section 236(c).

Petitioner argues that her conviction, which would normally render her inadmissible, is waivable based on a showing of hardship to her children under INA § 212(h). 8 U.S.C. § 1182(h). She intends to seek such a waiver from the Immigration Judge during her removal proceedings. As a result, the Petitioner claims that Section 1226(c) is unconstitutional in any case like this one where the noncitizen has not yet been ordered removed and is pursuing her administrative remedies. She seeks a writ of habeas corpus because the mandatory detention provisions of the statute allegedly violate her Fifth Amendment right to due process. She further seeks a temporary restraining order preventing the Respondents from transferring her to Oakdale, Louisiana.

## II. DISCUSSION

### A. *Temporary Restraining Order*

■ The Respondents assert that the Court lacks jurisdiction to prevent the INS from transferring the Petitioner to a federal detention facility in Oakdale, Louisiana. The Court agrees.

The Attorney General has the responsibility to "arrange for appropriate places of detention for aliens detained pending removal." 8 U.S.C. § 1231(g)(1). Congress

has determined that this responsibility should exist in the domain of the Attorney General, not the courts. The Attorney General's power to transfer aliens from one locale to another, in his discretion, arises from this statutory language. *See Avramenkov v. I.N.S.*, 99 F.Supp.2d 210, 213 (D.Conn.2000), *citing Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir.1999). The Statute further provides that no court has jurisdiction to review any decision or action the Attorney General makes "under this subchapter" except for "the granting of relief under section 1158(a)." [1]

Petitioner asserts that she is not claiming that the courts possess the power to monitor all transfer decisions made by the Attorney General involving INS prisoners. Rather she asserts that this Court should stop this particular transfer because it raises constitutional questions. Specifically, the Petitioner claims that the transfer will interfere with her relationship with her attorney and her ability to present witnesses at her removal hearing.

The Court is not persuaded by Petitioner's argument. While the transfer to Louisiana will make it more difficult for Petitioner to communicate with her attorney, the Petitioner will not be prevented from such communication. Petitioner will hold the same rights and be subject to the same removal proceedings whether she remains in Connecticut or is transferred to Louisiana. In addition, because Petitioner seeks a waiver based on showing of hardship to her children under INA § 212(h), much of the testimony at her hearing will come from her children. Counsel for Petitioner will continue to have easy access to Petitioner's children in preparing for any hearings because they will continue to reside in the metropolitan New York area. The Court recognizes that the transfer to Louisiana will require that the Petitioner's relatives travel to Louisiana, will increase the

cost of her representation, and will complicate communication between Petitioner and her lawyer; however, the Court rules that this transfer, although making representation of Petitioner less convenient, does not raise any constitutional concerns.

### B. Fifth Amendment—Due Process

 "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 307, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *accord Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("the Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent") (citations omitted). Due process is comprised of both substantive and procedural components. In regard to the former, "aliens who have entered this country, even illegally, have a substantive liberty interest that is implicated by arbitrary detention in deportation proceedings." *Diaz–Zaldierna v. Fasano*, 43 F.Supp.2d 1114, 1118 (S.D.Cal.1999), *citing Doherty v. Thornburgh*, 943 F.2d 204, 208–09 (2d Cir.1991).

The more difficult question is what level of judicial scrutiny applies to any restrictions on this liberty. Some courts have applied strict scrutiny in the situation of the mandatory detention of potentially deportable legal resident aliens. *See, e.g., Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998) (holding mandatory detention provision unconstitutional). Given similar circumstances, other courts have employed the more deferential standard of review enunciated by the Supreme Court in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). *See, e.g., Diaz–Zaldierna*, 43 F.Supp.2d at 1119 (holding mandatory detention provision constitutional as applied to petitioner).

---

**1.** Section 1158(a) deals with requests for political asylum.

And, finally at least one court has declined to decide which standard of scrutiny applies and has utilized both. *See Avramenkov v. I.N.S.*, 99 F.Supp.2d 210, 217 (D.Conn.2000) (holding mandatory detention provision constitutional under either standard).

In the instant case, the Petitioner asserts that the Court should apply strict scrutiny, while the Respondents counter that a more deferential standard should be applied. The Court is not aware of any Supreme Court or Second Circuit opinions directing that the mandatory detention of deportable legal resident aliens implicates a fundamental right and is consequently subject to strict scrutiny. Given the lack of consensus among courts regarding what standard of judicial scrutiny to apply when dealing with the mandatory detention of *lawful* permanent residents, the Court declines to rule that strict scrutiny should be utilized in the case of an individual, as is the case here, who is *not* a legal permanent resident.

The Court finds that a fundamental liberty interest is not involved in this case. "The private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in [her] native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). The Petitioner cites a number of cases, some of which are from this District, to support her position that Section 1226(c) is unconstitutional in any case like this one where the noncitizen has not yet been ordered removed and is pursuing her administrative remedies. *See, e.g., Patel v. Zemski*, 275 F.3d 299, 314 (3d Cir.2001); *Bi Zhu Lin v. Ashcroft*, 183 F.Supp.2d 551 (D.Conn.2002) ; *Zgombic v. Farquharson*, 89 F.Supp.2d 220 (D.Conn.2000). The Petitioner's reliance on those cases is misguided due to the fact that those petitioners were legal permanent residents.

Those decisions were in large part based on the significant liberty interests held by legal permanent residents. As the *Zgombic* court stated, "unless and until the decision regarding petitioner's removal becomes administratively final, it cannot be said with certainty that petitioner has no legal right to be in the United States." *Zgombic*, 89 F.Supp.2d at 236. In contrast, although the Petitioner in this case claims that she will seek a waiver based on showing of hardship to her children under INA § 212(h), unless and until the decision regarding Petitioner's waiver application is approved, it cannot be said with certainty that Petitioner has *any* legal right to be in the United States *whatsoever*. Further, given that such a waiver is discretionary, Petitioner's claim of a fundamental liberty interest in the United States is, at best, speculative.

■ Because a fundamental liberty interest is not involved in this matter, the Court's substantive due process analysis will utilize the test set forth in *Salerno*. The *Salerno* test involves two separate inquiries: (1) the statute must be regulatory, not punitive; and (2) if the statute is regulatory, it must not "appear excessive" in relation to the purpose behind the statute. *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095.

The Supreme Court has recognized that the detention of criminal aliens during immigration proceedings is not for the purpose of punishment. *See Zadvydas*, 185 F.3d at 290. This detention is incidental to the governmental purpose of removing aliens who are no longer entitled to remain in the United States. "Detaining criminal aliens during this removal process serves the regulatory purposes of preventing aliens from absconding prior to removal and of protecting the community." *Reyes v. Underdown*, 73 F.Supp.2d 653, 657 (W.D.La.1999) (footnote omitted).

The detention of criminal aliens, particularly those who are not legal permanent residents, pending the conclusion of their removal proceedings is not excessive given the legislative purpose of removing criminal aliens from the United States. Congress has limited the mandatory detention provisions of Section 1226(c) to aliens convicted of certain crimes, including aggravated felonies and controlled substance violations. Congress is not acting excessively in presuming that such aliens pose a danger to the community and/or a flight risk. In addition, detention ensures the presence of criminal aliens at removal proceedings.

Petitioner was convicted of credit card fraud in excess of $300,000 and at present has no legal right to be in the United States. Respondents claim that a criminal alien subject to mandatory detention like the Petitioner will generally have a removal hearing within one or two months. Given that the Petitioner was convicted of an aggravated felony, is in removal proceedings, and has only a possible hope of gaining the right to remain in the United States, her limited detention for several months is not excessive.

In sum, the Court concludes that Section 1226(c) is not punitive in nature and that the Petitioner's detention pursuant to the statute is not excessive given the Respondents' interests. Consequently, Section 1226(c) does not violate Petitioner's substantive due process rights.

## C. *Procedural Due Process*

■ In evaluating a claim that a petitioner has been denied procedural due process, the Court must determine (1) the private interest affected; (2) the probability of error and the effect of additional safeguards on the rate of error; (3) and the government's interest in dispensing with those safeguards. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As stated above, the Petitioner's private interest is liberty in the United States though at this time she possesses no legal right to remain in the United States. The risk of erroneous deprivation is minimal where there is no dispute about Petitioner's immigration status or her conviction. Her claim to discretionary relief is speculative. The provision of additional safeguards would be burdensome to the Respondents as the government would be required to give a bond hearing to all illegal aliens convicted of crimes and subject to detention under Section 1226(c). These additional safeguards would provide little value to the criminal alien whose removal is very likely given that such aliens are entitled to little relief from removal. *See Reyes,* 73 F.Supp.2d at 658. In addition the government has a substantial interest in ensuring the presence of criminal aliens at removal proceedings. *See Parra,* 172 F.3d at 958.

■ In sum, the Court finds that the denial of an individualized bond hearing to Petitioner, who is detained pursuant to Section 1226(c), is not a violation of her right to procedural due process.

## III. CONCLUSION

The Court rules that Section 1226(c) as applied to the Petitioner violates neither her substantive due process rights not her right to procedural due process. In addition, the Court finds that it lacks jurisdiction to prevent the Petitioner's transfer to Louisiana.

Accordingly, Petitioner's emergency petition for a writ of habeas corpus and her application for a temporary restraining order [Doc. No. 1] are DENIED.

SO ORDERED.